or are you going to have to exceed 15 minutes to reply? Good morning, your honors. Judge Norris, Judge Clay, and Judge Kethledge, I hope I pronounced that right. It's always a pleasure to be here. May it please the court, I am Robin Flores of the Chattanooga, Tennessee Bar. I think I've already reserved five minutes, Judge, and I'll get right to the crux of our argument. To say that this is a sad case would be at best an understatement. And because this case is so sad, the overriding theory in our argument is that because of the nature of this case and the sadness of the case, that the trial court should have been much more observant of due process procedures and rules of evidence than what we have seen here. Well, I mean, if somebody commits a completely monstrous crime, I mean, the nature of the crime is fair prejudice, really, not unfair. It is, your honor, but... Let me just say, I know you have a tough situation you're representing here. Yes, sir. But I submit to the court that the trial court needs to be more vigilant again, and I'll point out some reasons. I may be bouncing through more argument, but since we're on that, would be as to the issues that we have raised as to testimony from past alleged victims of this defendant, photographs, life and death photographs of the child, which I submit were unnecessary. We'll get to that more. And then the testimony of Ms. Maitland, who was the wife and mother of this child, Judge. Her testimony, I mean, just to sort of deal with that right off the bat, I mean, I think I know the testimony you're talking about, about how he'd sort of lose control of himself. Yes, sir. I mean, there was a young woman who I think testified to the same effect about him doing the same thing to her, I think, when she was six years old or nine years old or something. Yes, your honor. So if that came in properly, then it would seem like the testimony by the girlfriend, Maitland, was just cumulative in its effect. Yes, sir. And we've got some competing rules of evidence here that are strongly in play. We've got 412, 413, from 412 to 415. I'll get to that in a second, and then 403. The government, in their response brief, relied heavily on 413, specifically as far as allowing the past victims, one of them whose allegations were going back to 1999, and to allow that testimony in without rigorous cross-examination of that particular person under 412, we submit was an exercise of Congress to override and substitute its judgment for what 403 should have been, which we submit the analysis should have been under 403 of this evidence, is that when Congress enacted those rules of evidence, they basically took away from the judiciary and from the expert in the courtroom as to the balancing test and so on, which had been the trial court, took away that power from the judiciary and placed it in the hands of Congress. I might be right, but absent a constitutional violation, it's their prerogative. I understand that, Judge, but it gets to our due process analysis that we've raised in the third part of our argument dealing specifically with this issue. And in the Seventh Circuit, the law free, I believe I pronounced that right, the law free said that in the Seventh Circuit certain admissions or refusals, denials of admissions of evidence can give rise to a due process violation. And what we're saying here is that when Congress enacted those rules and overruled 403, that it in essence made it a field day, you know, open hunting ground day to allow any kind of testimony back from any victim no matter how attenuated by time. We've got in essence a trial within a trial when we do that. That's exactly what happened here. Without the ability to cross-examine these supposed victims as to their ability to recall and to determine their credibility. I don't follow that part. I mean, you were allowed to, were you trial counsel? No, I was not, Judge. Trial counsel was able to cross-examine the witness and the victims who testified, right? You know, the trial counsel was specifically prohibited to go into the sexual history because 412 bars that. The sexual history, Judge, and to determine through that examination whether these supposed victims, if they were victims under 412 under the definition, were mixing up memories. We have somebody that at the time was 6 in 1999, now in 2012 when this case was tried. Is there any evidence, any proffer, anything in the record that shows somebody else raped her when she was 6 or 9 years old? There were some illusions. She might mix up with Mr. Duman? Well, there were some illusions there, Judge, that that particular individual had made some MySpace comments about. She knew how to hurt people, that she had a history of drug use, and that she had some other sexual history as to that particular individual. But if the point is I want to make the jury think she's confusing a rape by Duman with a rape by somebody else, then that stuff doesn't really go to that confusion issue. But it goes to the credibility of the witnesses, and credibility not that she's lying, but that can she fully recall from nearly 12 years prior from a 6-year-old's perspective? I mean, here she is an adult trying to recall what happened to her back when she was 6. I barely remember anything. But the jury knows that, and you can argue that in closing. Well, I will submit to the court that it would be difficult to argue that in closing if you're not allowed to bring it up at trial. What question do you think the defense lawyer should have been able to ask but wasn't able to ask? What specific question? Specifically to go into how many other times she may have been raped, how many other times she may have had sexual encounters. When she's 6 or 9? Or even 10, 11, 12. And to whether her ability or whether those memories from those other instances, if there were any, were getting clouded over and overlaid with what happened when she supposedly was 6. Because arguably, the older you get, the more you're able to remember events. I mean, I remember events when I was 15 a lot better than I did when I was 5. And that, I believe, when you take away that ability to probe that, takes away a due process procedure from any defendant as to cross-examination, to put the government to its burden to determine whether this testimony should come in and should be believed by a jury. Now, if we go into Ms. Maitland's testimony, Your Honor, the trial court talked about allowing that in. Basically, the ruling that it was a 403A analysis rather than 404B. We think that, looking at the government's brief at page 20, the government noted that the trial court did not want to bring that testimony in for a prior bad act, but to show a tendency, a tendency. That's 404B territory. And as we argued that there was no meaningful jury out hearing about that testimony, about an adult, and how Mr. Duman supposedly was very aggressive in wanting oral sex. He craved it. He loved it. He was very forceful with her. You've got to look at the grovelment of that. What does that go on to? It goes to the guy's character, his character. And I think this is very important when we look at the overall weight of the evidence, is here in the weight of the evidence in the government's case, and in the rebuttal from Dr. Dragovich, but with the government's case, there were two medical personnel or doctors testifying. We had Dr. Krakow, who did three exams, three exams of this child, and didn't find any evidence of trauma. Dr. Starr, who conceded in cross that a foreign body could have occluded the air passageways. One of the theories or the points that the trial counsel was trying to make was that the child had somehow got a condom in her mouth and it occluded her air passageways. And then Dr. Dragovich opined. I had a trial with him. Thank you. He's a real character. He opined that the obstruction may have been by a condom and said it was a natural death and that the defendant's penis was too large to have done what it had done. So if we look at all the weight of that evidence in the government's case in chief, and then they try to bring up stuff like the photographs, try to bring up stuff about these past victims who we say were not victims under the rule, and I see I'm out of time, that then Ms. Maitland, all that testimony from Ms. Maitland and these other two victims of the photographs are highlighted in their prejudicial effect when you look at the weakness of the evidence from their own experts. Jennifer McManus Good morning, Your Honors. Jennifer McManus on behalf of the United States. I think I can agree with my colleague that this is a difficult case, as everyone, I'm sure, agrees. It was not, however, a close case. There was a lot of evidence against the defendant in this case, and the challenge for the government in this case was simply to get the jury to understand that this sort of crime could happen, and there was a lot of evidence that it did and that the defendant did it. I want to turn, I guess, to some of the issues that were just discussed, specifically the testimony of Natasha Maitland that has been challenged. Judge Keflage alluded to the fact that there is some similar testimony by one of the child victims known as SP or Shawna, and that testimony is on page ID 1181. It is almost identical to the testimony that Natasha Maitland offered with regard to the defendant's tendency to become, to lose control and how this could have happened. So it was offered as intrinsic evidence, and I think it was really not thought of as other acts evidence at all. What do you mean by intrinsic evidence again? It's not the sort of intrinsic evidence, I think, that we tend to think of when we say intrinsic evidence in terms of another act that's a prelude to the offense or that's inextricably intertwined with the offense, but intrinsic evidence includes any evidence that's directly probative of the charged offense. In this case, it was offered as directly probative of the issue that the defense had raised in its opening statement, which was you need to be looking throughout this trial for evidence of motive. How could this defendant have done this to his infant daughter when there's no other, there's not going to be any other evidence before you that he was abusive toward her or otherwise intended to harm her? How could he have done this crime? Wouldn't he at least have stopped short of killing this infant even if he was otherwise predisposed to engage in this behavior with her? And so that was the purpose for which it was offered. It was not offered to show that he did these other acts with his wife, and it was made very clear that it was consensual even if distasteful for her that he had a bad character, and so he must have therefore done this horrendous, terrible crime against his infant daughter. That's just not why it was offered. Okay. So you're saying it's not 404B evidence at all because it's intrinsic evidence? That's correct. And in any event, that it's cumulative, and if it was improper, that it was harmless error. In light of Shauna's testimony, in light of similar, not quite as on point, but very similar testimony from the other child victim, AKP, and in light of all of the other evidence against the defendant in the case. We went through all of the evidence in our brief, I think, in pretty good detail, but I'm happy to talk about any of the evidence. If the court has any concerns about whether any error would be harmless in this case or otherwise has any questions. I do want to talk about, though, before I do want to talk about the 412 issue briefly. My friend cited United States v. Lawfrey, the Seventh Circuit case, where there's due process concerns raised. And in that case, there really was a concern expressed by the Seventh Circuit that there wasn't a proper 403 balancing that was undertaken in terms of allowing, actually it's not on the 412 issue, it's admitting the 413, 414 evidence in the first place. And he talked about how there can be due process concerns about that. In this case, there was a very thorough 403 balancing undertaken by the district court. The district court issued a written opinion that explained why he thought that this evidence was probative and its prejudicial effect did not substantially outweigh the probative value. And then on the 412 issue, which is whether the defendant should have been allowed to cross-examine the child victims who were adults at the time of their testimony about their having been victimized by the defendant, there really isn't a good record to review that issue on because the defense never raised that issue. Repeatedly, the defense was asked, are you going to seek to try to get into this sort of subject on cross-examination? They didn't file a motion as is specifically required by the rule. The whole purpose of the rule is so there can be this sort of full vetting if the defense wants to get into that off of the record and that there can be a clear understanding of what the evidence is and whether there's a need for it. That wasn't done here. And the defense had a lot of latitude in terms of cross-examining on the witness's ability to recall the events that occurred. And there were actually involving Shawna, SP, there was testimony elicited by the government that she was sexually abused by another person at the same time. And so to the extent there might have been some crossover memory concerns that was fully explored both on direct and on cross, and that was all before the jury. How was that explored? I mean, you're saying she was crossed about whether she was mixing the memories of Duman with somebody else? She was. I didn't see. Okay. Yeah. Well, all right. She was. How does that come in under 412? Well, you know, maybe it shouldn't have, but the government said that in fairness, because these events occurred at exactly the same time and it was the government's understanding that there might have been some specific crossover memory concerns that because of due process concerns that we would not object and we would in fact elicit that testimony so that that would be before the jury. So there was some testimony. The defense wanted to get into that she'd made other accusations against yet other individuals and that there might have been other sexual abuse that had occurred or claims that she had made well outside this time frame. So that's all at page ID roughly 2298 to 99, and there's a person named Nugget who is the person who victimized her at or around the same time, and that was all before the jury. So there really was no 412 error in this case. One question I would like to ask you is specifically what was the purpose of admitting the photographs? I mean, what do they tend to make more likely? What relevant fact do they make more likely? Well, there's two categories. There's two photos that are premortem and two that are postmortem, and they serve different purposes. The two premortem photos are offered for the purpose of showing the baby roughly at or around the time that she died because a significant issue in the case was what stage of development was the baby in. There's a lot of change that happens from the time a baby is born until they're 15 weeks and then changes that occur later. So, for example, the whole defense theory was that this baby, who had never been seen to roll over by her father, by her mother, by anyone, somehow had gotten from the middle of this bed and rolled over several times, surmounting the comforters and pillows that had been surrounding her and landed on the floor somehow exactly right on this condom that she ingested. And that was the entire theory of the defense. So it was entirely proper for the government to put in a photo to show the baby and what she looked like and give the jury some context to determine whether that's viable or not. Was there a foundation that those photographs were close in time to when she died? There was. They were a few weeks before she died. So there is testimony. I don't have it at my fingertips, but there was testimony that it was a few weeks before she died. And what about the postmortem photographs? The postmortem photographs, there's two of them. They're pretty much the same. And they show the baby intubated. And there was testimony that was fairly significant in the case from the paramedic who had intubated her about how the tissues looked at the time that he intubated her and how easy or difficult it would have been. The fact that it wasn't as hard as it usually is to intubate her. What does a photograph of her actually intubated show as to how difficult or hard it had been an hour before when they did that procedure? I think it gives the jury some context to evaluate the testimony that's been given. Does it show how difficult or less difficult it is? No. But it gives the jury some context in which to see this is what happened, and he's testifying about it. In any event, there was not a lot of use of those photos at all during the entire course of the trial. And we submit that the court did not abuse its discretion, considerable discretion, in allowing essentially the same photo of the baby. It's sad, of course. There's a little. I mean, the rationale sounds a bit thin for the postmortem. I guess that's the only thing I'd say. It may be thin, but it is certainly not an abuse of discretion, and it was not harmful error in this case. Okay. If there are no further questions from the panel, then I'll sit down at this time. All right. Thank you. Counsel. Your Honor, as to my colleague's point about the photographs, it goes back to my earlier opening theme, is that the trial court has got to strongly look at this evidence, and we also had argued that the trial court did not. When it comes to these photographs, there are objections on the record. As to the life photographs, the trial court simply said, well, we're talking about a human being here. I'm going to let it in. And as to the death photographs, well, it simply showed what the witnesses have said. If the jury was that addled to not be able to discern from the testimony that we were talking about a live person and that the person was dead, the jury shouldn't have even been impaneled. So to allow these kind of photographs when you have ample testimony, as my colleague pointed out, you had an EMT talk about what happened, describe the intubation. To bring those in just pulls at the heartstrings of a jury. And in one of the photographs, at 6B has the victim with another small child in there. That's just laying a foundation. It's like, oh, all right. And it leads to the outrage more than it does any kind of probative value of what these show. If we get back into the 412 argument that my colleague raised, and it's harmless error, I would submit that it's not harmless error if, as the court agrees with us, that the forensic evidence alone in this case was rather weak and actually diminished the government's case. Then all these other things, these evidentiary issues that we raise, would have an actual non-harmless impact. And I would like to touch briefly, in response to my colleague talking about the alleged victims in this case, there's no real definition in Rule 412 as to the definition of a victim and whether it's a victim of that particular case or a victim in general. Well, you know, I kind of quarrel with you on that. It doesn't say the victim. It says an alleged victim. So it's not a definite article. It's basically any. And my colleague did make a very good point in their response brief about that using those terms, and. But if we were to take a look at the amendments, specifically the 1988 and 1994 amendments, they don't say anything about anyone who claims to have been a victim no matter how attenuated by time. And that goes, again, to why we believe 412 and the ones that follow by Congress actually have superseded. We've got Congress superseding the judicial power here that's allowed under 403. And I would submit to the Court that this analysis should have come under 403. And as the Court knows, we've got two. One rule of evidence doesn't necessarily exclude the other rule of evidence. But here where we have victims whose memories are so attenuated by time, 412, 413, 414, 415 leaves open, basically, an open hunting season to, hey, let's bring everything in here, no matter how old, no matter how long, and put that on trial. And then, oh, no, you know, I think about the scene in Devil's Advocate where Al Pacino was telling, I forget the guy's name, I always think of him as saying excellent, excellent. But he's telling his now what turned out to have been his son is that, okay, we've got these rules here that allow us to do things. You know, look, but don't touch. Touch, but don't taste. So what we're saying here is that the government can bring in the evidence, maybe say, okay, as my colleague alluded to, well, we've brought out some of this about her past, but, Mr. Duman, you can't cross-examine any further on it. That's inherently unfair. And again, Your Honors, we ask for, if not a complete reversal, then to rule, to set aside the judgment, vacate the judgment, and remand back for a new trial. Thank you, Your Honors. Thank you.